**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
(MIAMI DIVISION)**

CASE NO. 16-cv-62573-FAM

ANAIS ELIBRAHIMI,

       Plaintiff,

v.

BED BATH & BEYOND, INC.,

       Defendant.
_____/

**DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT
<u>WITH MEMORANDUM OF LAW</u>**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Bed Bath & Beyond, Inc. ("BB&B") moves for an order dismissing the claim brought by Plaintiff Anais Elibrahimi ("Plaintiff") in her Class Action Complaint ("Complaint") for failure to state a claim upon which relief can be granted.

## I.     INTRODUCTION

Plaintiff contends that she purchased certain "Damask, 500 Thread Count, 100% Egyptian Cotton Sheets" (the "Product") from a BB&B retail store at some undisclosed point over the last four years. Notwithstanding that BB&B did not manufacture the Product, Plaintiff contends that she was purportedly misled by BB&B into purchasing the Product because one of the statements on the Product's label—which is not attached to or described in the Complaint—allegedly states that it is made of "100% Egyptian Cotton." Plaintiff claims that this statement is false because, "on information and belief," undisclosed "testing" shows that the Product is not made of "100% Egyptian Cotton." Plaintiff offers no facts about the alleged testing, how such testing could possibly determine the country of origin for raw cotton in a manufactured product, or anything about her experience with the Product. Nonetheless, Plaintiff asserts a single claim for violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") based upon this so-called misrepresentation.

Plaintiff's lone claim fails as a matter of law for multiple, independent reasons. First, FDUTPA exempts from liability any "retailer who has, in good faith, engaged in the dissemination of claims of a manufacturer or wholesaler without actual knowledge that it violated" FDUTPA. Fla. Stat. § 501.211(2). This Court has addressed this exemption, holding that a FDUTPA claim requires dismissal when the plaintiff fails to allege facts to show that the retailer defendant had actual knowledge that the challenged statement on the product label was

false at the time of the plaintiff's purchase. *See Herazo v. Whole Foods Market, Inc.*, Case No. 14-61909-CIV, 2015 WL 4514510, at *3 (S.D. Fla. July 24, 2015) (Moreno, J.). Here, Plaintiff alleges that BB&B is a retailer, but does not and cannot allege *a single fact* to show that BB&B somehow had actual knowledge that the label was purportedly false at the unidentified time of Plaintiff's supposed purchase. Because the retailer exemption bars Plaintiff's FDUTPA claim against BB&B, it should be dismissed.

Second, Plaintiff has failed to plead a deceptive or unfair practice. Plaintiff's FDUTPA claim is entirely based on the legal theory that the "100% Egyptian Cotton" statement on the label of the Product is false and misleading, yet the Complaint does not—and cannot—plead facts to plausibly make this showing. Ignoring her burden under *Iqbal* and *Twombly*, Plaintiff alleges *no facts* about the raw cotton used to manufacture the Product, including where it supposedly comes from (if not from Egypt). Plaintiff does not even bother to attach the label for the Product—the label that serves as the basis for this entire action. Although the Complaint references unidentified private "testing" of the Product (and does so on "information and belief"), Plaintiff does not plead any details about it, such as what test was purportedly run, who conducted it, what specifically was tested, or the results. Worse yet, Plaintiff fails to allege a single fact to show that any such unidentified "testing" can somehow determine the *country of origin* of raw cotton in a manufactured product. Because Plaintiff has not and cannot allege any facts to show that the Product is not made of "100% Egyptian Cotton," Plaintiff's FDUTPA claim fails.

Third, Plaintiff's FDUTPA claim independently requires dismissal because Plaintiff has not pled that she suffered a recoverable loss under FDUTPA. Plaintiff alleges virtually no facts about her purchase of the Product or her experience with it. Although she makes the conclusory

assertion that she purchased the Product rather than "less expensive products," this is not a cognizable theory of damages under FDUTPA.  Plaintiff also provides no facts to support this speculative theory, including what she paid for the Product, what other less expensive products she purportedly would have purchased, or their price.

Likewise, Plaintiff fails to show that the Product she received was worth less than what she paid.  Plaintiff fails to plead a single fact demonstrating that the price of the Product itself was impacted by the "100% Egyptian Cotton" statement on the label, as opposed to other attributes of the Product, such as its thread count.  Critically, Plaintiff does not allege that the Product she allegedly purchased cost more than other 500 thread count bed sheets that contain some percentage of cotton from a country other than Egypt.  Because Plaintiff has not pled a recoverable loss under FDUTPA, her lone claim should be dismissed.

## II.  PLAINTIFF'S ALLEGATIONS

Plaintiff alleges that she purchased the Product from a BB&B retail store in Sunrise, Florida at an undisclosed time and for an undisclosed price.  (Compl. ¶¶ 1, 8, ECF No. 1.) Plaintiff contends that the Product was "labeled as being composed of '100% Egyptian Cotton'," but does not attach the labeling for the Product.  (*Id.* ¶ 1.)   Plaintiff asserts that based on unidentified "testing" and "information and belief," the Product was "not composed of 100% Egyptian Cotton," but only "contained approximately 6% of Egyptian cotton."  (*Id.* ¶¶ 1, 12.) Plaintiff does not allege any facts about what she paid for the Product or her experience with it.

Based upon these allegations, Plaintiff's Complaint contains a single claim for violation of FDUTPA.[1]  (*Id.* ¶¶ 33–43.)  Plaintiff alleges that BB&B violated FDUTPA by "deceptively advertis[ing], market[ing] and represent[ing] to consumers that the Product is made of 100%

---

[1]   For some reason, Plaintiff's Complaint states that her FDUTPA claim is "against Defendant Macy's."  (*Id.* at 9.)  BB&B is the only Defendant in this case.

3

Egyptian cotton" when "the product inside the packaging does not conform to the representations on the label." (*Id.* ¶¶ 18, 39.)  Plaintiff claims that she "suffered an ascertainable loss" due to BB&B's purported misrepresentation because she "paid a premium price for the [P]roduct." (*Id.* ¶ 41.)  Plaintiff seeks actual damages, statutory damages, attorneys' fees and costs, and declaratory and injunctive relief. (*Id.* ¶¶ 7, 42–43.)  Plaintiff seeks relief on behalf of a putative class of all purchasers of the Product in Florida. (*Id.* ¶ 25.)

### III.   PLAINTIFF'S FDUTPA CLAIM SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM

To survive a motion to dismiss under Rule 12(b)(6), Plaintiff must provide "more than labels and conclusions."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Instead, the well-pled factual allegations must transcend the "speculative," "conceivable," and "possible," and must "state a claim to relief that is plausible on its face."  *Id.* at 555–57, 566–67, 570.  In making this determination, the Court must disregard "legal conclusions" and "conclusory statements," and must scrutinize the well-pleaded factual allegations to ensure that they are more than "'merely consistent with' a defendant's liability."  *Ashcroft v. Iqbal*, 556 U.S. 662, 677–79 (2009); *see also Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1293 (11th Cir. 2010).

Applying these principles, Plaintiff's FDUTPA claim against BB&B should be dismissed for at least three independent reasons.

### A.   Plaintiff's FDUTPA Claim Fails Because Plaintiff Does Not And Cannot Plead Facts To Show That BB&B Knew The Label For The Product It Did Not Manufacture Was Allegedly False.

It is axiomatic that FDUTPA exempts from liability any "retailer who has, in good faith, engaged in the dissemination of claims of a manufacturer or wholesaler without actual

4

knowledge that it violated" FDUTPA.[2] Fla. Stat. § 501.211(2). This Court has found that FDUTPA "engrafts *a requirement* that [a retailer] violated the act with actual knowledge." *Herazo*, 2015 WL 4514510, at *3 n.2 (emphasis added). As such, a FDUTPA "claim is not *properly pled* under the statute" against a retailer where the complaint lacks sufficient factual "allegation[s] that [the] Defendant had actual knowledge it was violating the act." *Id*. (emphasis added).

Here, Plaintiff alleges that BB&B is a retailer (Compl. ¶ 26), yet does not and cannot plausibly allege that BB&B "had actual knowledge it was violating" FDUTPA. *See Herazo*, 2015 WL 4514510, at *3 n.2. There are no facts in the Complaint to show that BB&B had any knowledge—prior to this lawsuit—that the Product purportedly is not made with 100% Egyptian cotton. Plaintiff, for example, does not identify a single complaint to BB&B by a single customer regarding the quality—much less the origin—of the cotton in the Product. Nor does Plaintiff identify any public studies regarding the origin of the cotton in this Product. Because there is not a single fact showing that BB&B had knowledge that the raw cotton used to manufacture the Product purportedly sold to Plaintiff did not come entirely from Egypt, Plaintiff cannot bring a FDUTPA claim against BB&B.

At most, Plaintiff alleges that BB&B "knew, or should have known, or was willfully ignorant of the fact that the representations [on the Product] were deceptive and misleading."

---

[2] In addition to exempting a retailer without actual knowledge that it violated FDUTPA, FDUTPA also excludes other persons from its coverage, including "federally regulated banks." *De Leon v. Bank of Am., N.A. (USA)*, No. 6:09-CV-1251, 2009 WL 3822392, at *5 (M.D. Fla. Nov. 16, 2009) (citing Fla. Stat. § 501.212(4)(c) ("This part does not apply to: ... (4) Any person or activity regulated under law administered by: ... (c) Banks or savings and loan associations regulated by federal agencies.")). Florida courts routinely and consistently dismiss FDUTPA claims that plaintiffs bring against persons who are exempt from FDUTPA's coverage. *See, e.g.*, *Caban v. J.P. Morgan Chase & Co.*, 606 F. Supp. 2d 1361, 1371 (S.D. Fla. 2009) (dismissing FDUTPA claim against "federally regulated banks"); *DeLeon*, 2009 WL 3822392, at *5 (same).

(Compl. ¶ 40.)  This allegation, however, is phrased in the disjunctive ("knew . . . or should have known"), so it does not even purport to allege that BB&B knew about any supposed problem with the label of the Product.  More fundamentally, it is wholly conclusory; it fails to *allege facts to plausibly show* that BB&B—a retailer—had *actual knowledge* that the label on the Product was false when it was sold to Plaintiff.  This allegation amounts to nothing more than a legal conclusion, and it must be rejected under *Iqbal* and *Twombly*.  *See, e.g.*, *Iqbal*, 556 U.S. at 681 (holding that "conclusory" allegations are "not entitled to be assumed true" for a motion to dismiss).

Because Plaintiff fails to allege facts showing that BB&B "had actual knowledge it was violating" FDUTPA at the time that Plaintiff allegedly purchased the Product, Plaintiff's FDUTPA claim should be dismissed.  *See Herazo*, 2015 WL 4514510, at *3 n.2.

### B. Plaintiff's FDUTPA Claim Fails Because Plaintiff Does Not And Cannot Allege An Actionable Misrepresentation.

To plead a plausible FDUTPA claim, Plaintiff must show that the "100% Egyptian Cotton" statement on the Product's label is false or misleading.  (Compl. ¶¶ 1–3, 5–7, 12, 15, 16, 18, 22, 39–42.)  Indeed, it is black-letter law that to succeed on a misrepresentation-based claim that challenges the truthfulness of a statement on a product's label, a plaintiff may not just contend that the statement is false, but must allege specific facts to show that the representation is, in fact, false.  *See, e.g.*, *Guerrero v. Target Corp.*, 889 F. Supp. 2d 1348, 1355–56 (S.D. Fla. 2012) (dismissing misrepresentation-based claims because plaintiff relied upon conclusory allegations that "Defendant's honey did not contain pollen" without providing specific facts); *see also Toback v. GNC Holdings Inc.*, No. 13–80526–CIV, 2013 WL 5206103, at *5–6 (S.D. Fla. Sept. 13, 2013) (dismissing false labeling claim because plaintiff's allegations simply assert that the statement on the label are false without any support for that assertion and "thus fail to raise

[p]laintiff's claim . . . above the speculative level"); *Wilson v. LNV Corp.*, No. 7:14–CV–145–FL, 2015 WL 751606, at *6 (E.D.N.C. Feb. 23, 2015) (dismissing state consumer protection act claim because "Plaintiff provides no specific facts showing how the documents" contained false representations); *Arroyo v. Pfizer, Inc.*, No. C–12–4030 EMC, 2013 WL 415607, at *4–5 (N.D. Cal. Jan. 31, 2013) (dismissing false labeling claim regarding nutritional supplement because allegation that dietary supplement "does not support healthy immune function" is nothing more than an improper "conclusory statement[]" and because plaintiff failed to allege facts to show why the label is false); *4 MVR, LLC v. Warren W. Hill Constr. Co.*, No. 12–10674–DJC, 2013 WL 310290, at *5 (D. Mass. Jan. 25, 2013) (dismissing misrepresentation claim because the plaintiff "fails to plead the factual basis that would make it reasonable to determine that the[] representations were false").

This common-sense principle applies with even greater force where, like here, the challenged statement on the product's label involves a product characteristic that cannot be proven untrue through customer experience alone. In those situations, courts routinely dismiss false labeling claims when (a) the plaintiff fails to allege specific facts from scientific testing or studies to plausibly show that the statement in question is not true; or (b) the scientific testing or study relied upon does not squarely address the specific representation at issue. *See, e.g.*, *Mazzeo v. Nature's Bounty, Inc.*, No. 14-60580-CIV, 2014 WL 5846735, at *4 (S.D. Fla. Nov. 12, 2014) (dismissing FDUTPA claim based upon allegedly false label regarding efficacy of ingredient in product because plaintiff offered no facts to support conclusory allegations and sources did not show label was false); *Cortina v. Wal-Mart, Inc.*, No. 13–cv–2054 BAS (DHB), 2014 WL 2860285, at *5–6 (S.D. Cal. June 23, 2014) (dismissing claim that statements on product's label were false because plaintiff failed to allege sufficient scientific evidence to

7

support claims regarding absorption rate and failed to allege why product failed to satisfy plaintiff's expectations); *Padilla v. Costco Wholesale Corp.*, No. 11 C 7686, 2013 WL 195769, at *3 (N.D. Ill. Jan. 16, 2013) (dismissing misrepresentation-based claims because plaintiff's alleged studies did not assess effectiveness of entire product); *Eckler v. Wal-Mart Stores, Inc.*, No. 12–CV–727–LAB–MDD, 2012 WL 5382218, at *3 n.2, *5–6 (S.D. Cal. Nov. 1, 2012) (dismissing misrepresentation-based claims based upon labeling and concluding that it is "really only scientific testing that can show" whether statements on a label are "false and/or misleading" and that studies did not show "what [the plaintiff] claims they do"); *Padilla v. Costco Wholesale Corp.*, No. 11 C 7686, 2012 WL 2397012, at *4 (N.D. Ill. June 21, 2012) (dismissing claim for false advertising based upon statements on label because plaintiff failed to point to any studies that demonstrated the alleged falsity of the product's statements).

Plaintiff's Complaint ignores these well-settled legal principles. As an initial matter, Plaintiff fails to describe or attach the very label that she challenges. While the Complaint purports to reference the "front and back labels . . . as shown below" (Compl. ¶ 16), there are no labels for the Product depicted in the Complaint, and Plaintiff fails to attach them. Plaintiff cannot bring a false labeling putative class action against BB&B without identifying or attaching the actual label for the product that she purchased. *See e.g.*, *Trazo v. Nestlé USA, Inc.*, Case No. 5:12–CV–2272, 2013 WL 4083218, at *13 n.99 (N.D. Cal. Aug. 9, 2013) (for mislabeling claims, courts "require the plaintiffs to 'identify[] or attach[] representative samples of the misleading materials' to provide adequate context and sufficiently make out a claim." (internal citations omitted)).

Apart from this fundamental threshold defect, Plaintiff relies ***exclusively*** upon legal conclusions and other conclusory allegations concerning the Product:

8

- "BB & B, Inc. has deceptively advertised, marketed and represented to consumers that the Product is made of 100% Egyptian cotton, because the product inside the packaging does not conform to the representations on the label." (Compl. ¶ 18);

- "[C]onsumers, including Plaintiff and members of the Class, have purchased a product that is not made of '100% Egyptian Cotton' as advertised." (*Id.* ¶ 40);

- BB&B "continu[es] to make deceptive and misleading statements on the labeling of the Product, including, but not limited to, representations that the Product is made of '100% Egyptian Cotton'." (*Id.* ¶ 42.)

(*See also* Compl. ¶¶ 5, 15, 21–22, 38–39.)  These conclusory allegations fail to allege any facts to show that the cotton in the Product does not come entirely from Egypt.  They amount to nothing more than the legal conclusion that the label is false, and they must be rejected under *Iqbal* and *Twombly*.

Once these conclusory allegations are properly disregarded, it is clear that Plaintiff does not and cannot show that the Product's label is false.  Plaintiff does not provide any invoices, witness statements, or other documents showing that the cotton used to manufacture the Product comes from somewhere other than Egypt.  In fact, Plaintiff does not allege a single fact about the manufacturing process for the Product itself, much less a single fact to show where the cotton used to manufacture the Product purportedly came from.

At most, Plaintiff repeatedly concludes that unidentified "testing" was conducted on the Product and that, "on information and belief," such "testing" indicates that "the Product contains far less than 100% Egyptian cotton."  (Compl. ¶ 1; *see also id.* ¶ 12.)  But Plaintiff's Complaint wholly fails to allege any facts about this "testing," including who conducted it, when, the results, or any scientific data supporting this "testing."[3]  More fundamentally, Plaintiff fails to show that such "testing" (or any type of testing) could ***possibly*** determine the ***country of origin***

---

[3] Plaintiff alleges that the "testing" is attached to the Complaint. (*Id.* ¶ 1.)  No "testing" is attached to the Complaint.

9

of raw cotton in an already-manufactured product. This is fatal to Plaintiff's entire theory. Because Plaintiff has not plausibly pled that the label of the Product is false, Plaintiff's FDUTPA claim fails as a matter of law and should be dismissed. *See Guerrero*, 889 F. Supp. 2d at 1355–56; *Eckler*, 2012 WL 5382218, at *3 n.2, *5–6.

### C. Plaintiff's FDUTPA Claim Fails Because Plaintiff Suffered No Cognizable Injury Under FDUTPA.

As an element of her FDUTPA claim, Plaintiff must also allege facts to show that she suffered "actual damages." Fla. Stat. § 501.211(2); *Mesa v. Law Enforcement Sys., LLC*, No. 15-21089-CIV-ALTONAGA, 2015 WL 12804525, at *6 (S.D. Fla. Aug. 4, 2015) (dismissing FDUTPA claim because "Plaintiff has failed to plead any actual damages, as required to bring a FDUTPA claim"); *Licul v. Volkswagen Grp. of Am., Inc.*, No. 13–61686–CIV, 2013 WL 6328734, at *5 (S.D. Fla. Dec. 5, 2013) (same).[4] It is well-settled that "[s]ubjective feelings of disappointment are insufficient to form a basis for actual damages under the statute." *Jones v. TT of Longwood, Inc.*, No. 6:06–cv–651–Orl–19DAB, 2007 WL 2298020, at *7 (M.D. Fla. Aug. 7, 2007). Instead, under FDUTPA, "actual damages" are limited to the "difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered[.]" *Rollins, Inc. v. Butland*, 951 So. 2d 861, 869 (Fla. 2d DCA 2006) (quoting *Rollins, Inc. v. Heller*, 454 So. 2d 580, 585 (Fla. 3d DCA 1984)). When a plaintiff "fails to allege a recoverable loss under FDUTPA, the complaint fails to state a cause of action under FDUTPA." *Rodriguez v. Recovery Performance & Marine, LLC*, 38 So. 3d 178, 180–81 (Fla. 3d DCA 2010).

---

[4] Injury-in-fact is also required for Article III standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) ("plaintiff must have suffered an 'injury in fact'" for Article III standing); *Stalley v. Orlando Reg'l Healthcare Sys., Inc.,* 524 F.3d 1229, 1232 (11th Cir. 2008) ("[A] plaintiff without an injury in fact lacks Article III standing, and the federal courts do not have jurisdiction over his or her complaint.").

10

Applying these principles, courts have dismissed similar false labeling claims against BB&B for lack of a cognizable injury.  In *Solo v. Bed Bath & Beyond, Inc.*, Civil No. 06-1908 (SRC), 2007 WL 1237825 (D.N.J. Apr. 26, 2007), for instance, the plaintiff alleged that BB&B violated the New Jersey Consumer Fraud Act ("CFA")—which, like FDUTPA, requires actual damages—by misrepresenting that the bed sheets he purchased were "1000 Thread Count" when the sheets actually "had a thread count of only 492."  *Id.* at *1.  The court dismissed the CFA claim with prejudice, holding that the plaintiff failed to show that he suffered any actual damages.  *Id*. at *3.  The court determined that merely paying for a product with an allegedly lower thread count than advertised was not sufficient to plead a cognizable injury.  *Id.*  The court further reasoned that the plaintiff failed to plead specific facts showing that the "sheets he received were worth an amount of money less than the sheets he was promised, or that he experienced a measurable out-of-pocket loss because of his purchase."  *Id.*

Here, as in *Solo*, Plaintiff does not and cannot allege any facts showing that she suffered actual damages.  Plaintiff contends that she "purchased the premium priced Product *in lieu of the less expensive products*" (Compl. ¶ 5 (emphasis added)), but this is not a cognizable theory of recoverable loss under FDUTPA.  *Rollins, Inc.*, 950 So. 2d at 869 (describing cognizable damages under FDUTPA).  And even if it were, Plaintiff does not allege what she paid for the Product, what alternative, less expensive product she supposedly would have purchased, or the price of that product.

Similarly, Plaintiff asserts that the "Product is worth less than the Plaintiff . . . bargained to receive" (Compl. ¶ 6), but Plaintiff wholly fails to allege any facts to support this legal conclusion, too.  Plaintiff does not allege anything about her experience with the Product to show that it did not live up to her expectations.  Nor does Plaintiff allege facts to show that the Product

11

was worth less that what she paid because some percentage of the cotton supposedly came from somewhere other than Egypt.  Indeed, there is nothing in the Complaint to show that the Product carried a higher price by virtue of the "100% Egyptian Cotton" statement on the label, as opposed to other attributes of the Product, like, for instance, its thread count.

Unable to plead facts to show that she was harmed, Plaintiff resorts to conclusory assertions that she "suffered damages" and "an economic loss."  (*Id.* ¶¶ 6, 21.)  These allegations are nothing more than the very "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" that *Iqbal* prohibits.  *See Iqbal*, 556 U.S. at 678.  For this independent reason, Plaintiff's FDUTPA claim should be dismissed.

## IV. CONCLUSION

Plaintiff does not and cannot allege any facts to show that the Product does not contain 100% Egyptian cotton, that BB&B knew that the label was supposedly false at the time of Plaintiff's purchase, or that Plaintiff suffered any type of cognizable harm.  Thus, BB&B respectfully requests that the Court dismiss Plaintiff's Complaint.

Dated:  February 20, 2017

Respectfully submitted,

*/s/ Brian M. Ercole*
Annie Estevez (Fla. Bar No. 991694)
Brian M. Ercole (Fla. Bar No. 0102189)
Clay M. Carlton (Fla. Bar No. 85767)
Morgan, Lewis & Bockius LLP
200 South Biscayne Boulevard, Ste. 5300
Miami, FL 33131-2339
Telephone: (305) 415-3000
Facsimile: (305) 415-3001
Email: annemarie.estevez@morganlewis.com
Email: brian.ercole@morganlewis.com
Email: clay.carlton@morganlewis.com

*Attorneys for Bed Bath & Beyond, Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 20, 2017, I filed the foregoing Defendant's Motion To Dismiss Plaintiff's Class Action Complaint with the Clerk of the Court through the CM/ECF system, which will send a notice of electronic filing to all counsel of record for the parties.

*/s/ Brian M. Ercole*
Brian M. Ercole